IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| KEVIN CUPP, | § | |
|     PLAINTIFF, | § | |
| | § | |
| V. | § | CASE NO. 6:23-CV-855 |
| | § | |
| NUCOR CORPORATION, | § | |
|     DEFENDANT. | § | |

## ORDER AND MEMORANDUM

Before the Court is Defendant Nucor Corporation's Motion for Summary Judgment (Dkt. 49) and Plaintiff's related Motion for Leave to Replace Copy of Exhibit (Dkt. 62). The Court ruled by text-order on December 1, 2025, stating the Motion for Summary Judgment is **DENIED** and that a written order reflecting the Court's analysis would be forthcoming. The Court hereby sets forth its analysis in support of denying the Motion for Summary Judgment. Further, the Court **GRANTS** Plaintiff's Motion to Replace Copy of Exhibit (Dkt. 62).

### I.  BACKGROUND

Plaintiff Cupp brought this personal injury action against Nucor arising out of injuries he sustained while performing repairs and modifications at Nucor's Steel Texas plant. Dkt. 41, Pl.'s Sec. Am. Compl. ¶ 9. Cupp was employed by Martin Specialty Coatings ("MSC"), and Nucor had engaged MSC to provide various modification and repair services at Nucor's mill. Dkt. 49, Def.'s Mot. for Summ. J. at 3. Pursuant to a written agreement between Nucor and MSC, MSC was an independent contractor for Nucor. *Id.*

Cupp was assigned to work at Nucor's bar mill in the fall of 2023, and was assigned to work in the "Bag House" to perform work that involved the cleaning and repair of the outer surface

of pipes in the Bag House. *Id.* While Cupp was performing the cleaning and repair work, he was using a grinder that produced sparks from the pipe and ignited a nearby rag with flammable solvent. Dkt. 41, Pl.'s Am. Compl. ¶ 26, 32. A resulting fire spread and caused Cupp severe burns. *Id.* ¶ 34.

Cupp sued Nucor, asserting theories of negligence, premises liability, negligent undertaking, respondeat superior, "ratification," and gross negligence. *See generally id.* Nucor filed its Motion for Summary Judgment, arguing that all of Cupp's claims arise out of alleged negligence or are derivative of negligence, and that (i) the claims are barred by Chapter 95 of Texas Civil Practices & Remedies Code; (ii) Nucor had no common law duty to protect Cupp from his injury because Nucor did not control Cupp's work; and (iii) Nucor owed no duty to warn of the open and obviously dangerous condition Cupp created. *See* ECF No. 49, Mot. for Summ. J. at 8.

Cupp filed his Response to Defendant's Motion for Summary Judgment, and attached Exhibit D. *See* Dkt. 58-4, Gibson Aff. Exhibit D contains the Affidavit of Benjamin Gibson, as well as Mr. Gibson's *Curriculum Vitae*. *Id.* Mr. Gibson is an expert retained by Cupp, and portions of the Exhibit D attached to the Response were improperly scanned. *See* Dkt. 62, Pl.'s Mot. for Leave to File. Nucor filed Evidentiary Objections and asked the Court to strike Exhibit D under Rule 56(c)(2). Dkt. 61, Def.'s Obj. to Pl.'s Summ. J. Evid. Nucor argued that Mr. Gibson's Affidavit is not competent summary judgment evidence under Rule 702, contains hearsay, and that Cupp has not demonstrated that it should be admissible, so it should be struck. *Id.* at 2-4.

Cupp filed his Motion for Leave to Replace the Copy of Exhibit D and response to Nucor's Motion to Strike the Exhibit. Dkt. 62, Pl.'s Mot. for Leave to File. Cupp argued that Nucor's

objections should be overruled and that leave to replace the improperly scanned copy of Exhibit D should be granted, as it would not pose any prejudice to Nucor. *Id.*

## II.     LEGAL STANDARD

Summary judgment is proper if "there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Meadaa v. K.A.P. Enters., L.L.C.*, 756 F.3d 875, 880 (5th Cir. 2014). A dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party meets this burden, the nonmoving party must come forward with specific facts that establish the existence of a genuine issue for trial. *Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc.*, 738 F.3d 703, 706 (5th Cir. 2013) (quoting *Allen v. Rapides Parish Sch. Bd.*, 204 F.3d 619, 621 (5th Cir. 2000)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Hillman v. Loga*, 697 F.3d 299, 302 (5th Cir. 2012) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

In deciding whether a fact issue has been created, the court must draw all reasonable inferences in favor of the nonmoving party, and it "may not make credibility determinations or weigh the evidence." *Tiblier v. Dlabal*, 743 F.3d 1004, 1007 (5th Cir. 2014) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)). At the summary judgment stage, evidence need not be authenticated or otherwise presented in an

admissible form. *See* FED. R. CIV. P. 56(c); *Lee v. Offshore Logistical & Transp., LLC*, 859 F.3d 353, 355 (5th Cir. 2017). However, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *United States v. Renda Marine, Inc.*, 667 F.3d 651, 655 (5th Cir. 2012) (quoting *Brown v. City of Hous.*, 337 F.3d 539, 541 (5th Cir. 2003)).

### III.   DISCUSSION

#### A. Motion to Strike & Motion to Replace Exhibit

Nucor filed objections to Cupp's response to its motion for summary judgment, arguing that Exhibit D containing Mr. Gibson's Affidavit should be struck. Dkt. 61, Def.'s Obj. to Pl.'s Summ. J. Nucor argued that Mr. Gibson's Affidavit is not admissible summary judgment and should be struck. *Id.* Nucor's primary argument is that Mr. Gibson's Affidavit is not competent summary judgment evidence or admissible under Federal Rule of Evidence 702, as Nucor alleges that Mr. Gibson's Affidavit is full of "trust me I'm an expert" opinions and should be stricken. *Id.* at 3. Notably, Nucor reserved the right to file a formal objection under Federal Rule of Evidence 702 in a footnote. *Id.* at n. 1. Nucor uses Rule 702 in its objection to argue that Mr. Gibson's opinions should not be given any credence and should rather be considered inadmissible hearsay. *Id.* at 3-4.[1]

Cupp argues that Mr. Gibson's Affidavit contains opinions that are reliable and supported by sufficient facts and evidence in the record. Dkt. 62, Pl.'s Mot. for Leave to File. Cupp explains that Mr. Gibson addresses Cupp's legal claims in an area where he is qualified and in a

---

[1] Nucor also lodged specific objections against paragraph 16, paragraph 29, and the Belzona excerpts. Dkt. 61, Def.'s Obj. to Pl.'s Summ. J. at 6-7. The Court finds that all of Cupp's responses to those specific objections satisfactorily demonstrate they should not be stricken. *See* Dkt. 62, Pl.'s Mot. for Leave to File at 2-3. Further, the Court does not find that any of Mr. Wilkinson's deposition was used in a way to mislead the Court when the answers are read in their entirety.

way that is reliable, and that facts stated in an expert's affidavit do not need to be based on the expert's personal knowledge. *Id.* at 4.  Cupp also moved for leave to replace Exhibit D with a properly scanned copy. Cupp explained that Defendant would not be prejudiced by allowing Plaintiff to replace the improperly scanned copy—done inadvertently—with a corrected copy. Cupp also explained that the portions objected to were already in Nucor's possession after being provided on September 16, 2025. *Id.* at 2.

"With respect to expert testimony offered in the summary judgment context, the trial court has broad discretion to rule on the admissibility of the expert's evidence and its ruling must be sustained unless manifestly erroneous." *Stelly v. Dep't of Pub. Safety & Corr. Louisiana State*, 149 F.4th 516 (5th Cir. 2025) (quoting *Boyd v. State Farm Ins.*, 158 F.3d 326, 331 (5th Cir. 1998)). An expert's opinion being based on one party's version of the contested facts is no reason to exclude his testimony. See *Gen. Elec. Capital Bus. Asset Funding Corp. v. S.A.S.E. Military Ltd.*, No. CIV. SA-03-CA-189-RF, 2004 WL 5495588 (W.D. Tex. Oct. 6, 2004) (citing *Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1392 (Fed. Cir. 2003)). The Court finds that Nucor's objections are in essence a *Daubert* motion conducted at the motion for summary judgment stage, while reserving the right to present a proper *Daubert* against Mr. Gibson later. The Court does not find that Mr. Gibson's Affidavit is so unreliable that it must be struck. The Court agrees with Cupp that Mr. Gibson's Affidavit is relevant to his area of qualification. Cupp will be granted leave to file the corrected copy of Exhibit D, as there is no prejudice to Nucor and the Affidavit is not struck as summary judgment evidence.

### B. Motion for Summary Judgment

1. Chapter 95

The Court finds there is a genuine issue of material fact that precludes summary judgment and prevents the Court from finding that Chapter 95 of the Texas Civil Practices & Remedies Code protects Nucor from liability. Nucor argues that Chapter 95 applies to Cupp's claims, making his only possibility of relief the narrow exception found in § 95.003. Section 95.003, entitled "Liability for Acts of Independent Contractors," provides:

> A property owner is not liable for personal injury, death, or property damage to a contractor, subcontractor, or an employee of a contractor or subcontractor who constructs, repairs, renovates, or modifies an improvement to real property, including personal injury, death, or property damage arising from the failure to provide a safe workplace unless:
>
> (1) the property owner exercises or retains some control over the manner in which the work is performed, other than the right to order the work to start or stop or to inspect progress or receive reports; and
>
> (2) the property owner had actual knowledge of the danger or condition resulting in the personal injury, death, or property damage and failed to adequately warn.

TEX. CIV. PRAC. & REM.CODE ANN. § 95.003 (Vernon Supp. 2008).

Cupp, on the other hand, argues that Chapter 95 should not apply because Cupp's injury does not result from the pipe, it results from the chemical solvent he was using. Dkt. 58, Pl.'s Resp. to Def.'s Mot. for Summ. J. at 15.

Chapter 95 provides owners of real property heightened premises liability protection by insulating landowners from qualifying injuries suffered by employees of independent contractors. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 95.003. The defendant initially bears the burden to prove that Chapter 95 protection applies in a case; once proven, the burden shifts to the plaintiff to show that the stipulations in § 95.003(1)–(2) are satisfied before a court can permit recovery. *Vanderbeek v. San Jacinto Methodist Hosp.*, 246 S.W.3d 346, 352 (Tex. App.—Houston

[14th Dist.] 2008, no pet.) (holding that a defendant landowner must "conclusively prove[ ] that Chapter 95 applies," before the burden appropriately shifts back to the plaintiff).

Chapter 95, however, is not unlimited in scope. *See Maldonado v. AEP Tex. Inc.*, 681 F. Supp. 3d 704, 711 (S.D. Tex. 2023) Chapter 95 shields property owners from liability only from claims:

> (1) against the property owner, contractor, or subcontractor for personal injury, death, or property damage to an owner, a contractor, or a subcontractor or an employee of a contractor or subcontractor; and
>
> (2) that ***arises from the condition or use of an improvement*** to real property where the contractor or subcontractor constructs, repairs, renovates, or modifies the improvement.

TEX. CIV. PRAC. & REM. CODE ANN. § 95.002 (emphasis added). The Court finds that Nucor has not carried its burden of showing Chapter 95's applicability to this case. Although it is uncontested that Cupp is an employee of an intendent contractor, Nucor has not shown his injuries arise from the condition or use of an improvement to real property. Rather, Cupp's injuries arise from the flammable MEK solvent which was present during his repair work. Following the statutory language, and how it has been interpreted, the Court agrees with Cupp that the pipe itself being repaired was not the source of Cupp's injuries.

For Chapter 95 to apply, the "condition" refers to premises and "use" refers to activities—so Chapter 95 applies "to all negligence claims that arise from either a premises defect or the negligent activity of a property owner or its employees by virtue of the 'condition or use' language in section 95.002(2)." *Ineos USA, LLC v. Elmgren*, 505 S.W.3d 555, 562 (Tex. 2016). Nucor argues that *Ineos* causes all of Cupp's claims to fall under the narrow § 95.003 exception, which would wipe out his common law claims for negligence, negligent undertaking, gross negligence, premises liability, respondeat superior, and ratification. Dkt. 49, Def.'s Mot. for Summ. J. at 17.

However, the Court finds that taken in full, *Ineos* demonstrates that Chapter 95 does not apply to Cupp's claims. His injuries arise from the flammable MEK solvent—which is not a "condition" or "activity" or improvement. The pipe he was assigned to work on was not the *source* of Cupp's injury—it was merely the location of the injury. Rather, the Court agrees with Cupp that his claims arise from the presence of a highly flammable solvent being near him on a platform which was unmarked and for which he was unwarned. Therefore, the Court does not find that Chapter 95 bars Cupp's claims or that his only source of recovery would be the narrow exception in § 95.003.

Because Nucor's Motion largely rests on Chapter 95 requiring summary judgment here, the Court finds that the Motion should be denied based on those arguments and will turn to Nucor's remaining grounds.

### 2. Cupp's Claims Outside of Chapter 95

Nucor argues that Cupp's claims would fail even if Chapter 95 did not apply because in a case not governed by Chapter 95, a property owner is only liable when it "exercised some control over the relevant work and either knew or reasonably should have known of the risk or danger." Dkt. 49, Def.'s Mot. for Summ. J. at 18 (quoting *Rawson v. Oxea Corp.*, 557 S.W.3d 17, 25 (Tex. App.—Houston [1st Dist.] 2016, pet. dism'd)). Therefore, Nucor argues that because it did not control Cupp's work, Cupp's claims fail under the common law.

The requisite control can be contractual or actual. *Vanderbeek v. San Jacinto Methodist Hosp.,* 246 S.W.3d 346, 352 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (citing *Dow Chem. Co. v. Bright,* 89 S.W.3d 602, 606 (Tex. 2002)). In evaluating actual control, Texas courts have generally focused on determining whether the property owner retained or exercised actual

control over the manner in which the plaintiff-independent contractor or subcontractor performed his job. *Dow Chem. Co.*, 89 S.W.3d at 606.

Here, there is a genuine issue of material fact as to whether Nucor exercised control over the manner in which Cupp's work was performed. And there is a genuine issue of material fact as to whether Nucor and either knew or reasonably should have known of the risk or danger that resulted in Cupp's personally injury. Therefore, the Court does not find that summary judgment is appropriate for Cupp's common law claims.

### i. Control

As to the fact issue on whether Nucor exercised control over Cupp's work, *Ellwood Texas Forge Corp. v. Jones* provides an instructive history on how the Texas Supreme Court has clarified what constitutes "control." *See Ellwood Tex. Forge Corp. v. Jones*, 214 S.W.3d 693, 700-01 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). The *Ellwood* court explained that in *Hoechst–Celanese Corp. v. Mendez,* the Texas Supreme Court held that an employer owes a narrow duty "that any safety requirements and procedures it promulgated did not unreasonably increase, rather than decrease, the probability and severity of injury." *Id.* (citing *Hoechst-Celanese Corp. v. Mendez*, 967 S.W.2d 354, 358 (Tex. 1998)). *Ellwood* explained that approach was consistent with the Texas Supreme Court's prior precedents and section 414 of the Restatement, because the employer's duty of care was "commensurate with the control it retain[ed] over the contractor's work." *Id.*

*Ellwood* went on to explain that in *Dow Chemical Co. v. Bright*, the Texas Supreme Court held that the premises owner did not exercise actual control when it had a safety representative on site who could have stopped the independent contractor's employee from working had it known of the safety hazard on its premises. *Id.* (citing *Dow Chem. Co. v.*

*Bright,* 89 S.W.3d 602, 608 (Tex.2002)). According to *Ellwood*, the *Dow* court explained, "[t]he fact that Dow implemented a safe work permit system as an attempt at creating a safer construction site did not unreasonably increase the probability and severity of Bright's injury." *Id.* The *Ellwood* court went on to find the employer had not exercised control in the case.

Here, however, Cupp points to safety requirements and procedures promulgated by Nucor which raise a genuine issue of material fact as to whether they increased the probability and severity of injury to Cupp. Cupp's cited deposition testimony of Mark Alderson discusses the "hot work" permitting procedure. *See* Dkt. 53-1, Alderson Dep. Mr. Alderson discussed how a "hot work" permit needed to be issued if hot work would be performed. Mr. Alderson also discussed how a Nucor employee was required to preapprove grinding activities, and that all chemical containers brought or utilized on-side must be properly labeled. *Id.* 16:3-20. Cupp has demonstrated there were safety requirements and procedures promulgated by Nucor.

There is a genuine issue of material fact as to whether the safety requirements increased the probability and severity of injury to Cupp because Cupp also demonstrates Nucor's employees' practice of failing to implement those safety requirements and their directions to completely disobey them. Cupp presents deposition testimony of Wesley Wilkinson, explaining that he was directed to store the flammable MEK solvent in an unmarked container. Dkt. 53-2, Wilkinson Dep. 24:16-22. Cupp's assignment also lacked a "hot work" permit, which would have been required by the previously explained safety procedures. See Dkt. 53-4, Gibson Aff. at 19-20 (explaining hot work procedures). In this case, the safety requirements point to an actual sense of control over independent contractors' work—making them obtain "hot work" permits and receive preapproval from Nucor employees for several activities—without the sort of "safe harbor" discussed by the *Ellwood* court, where the safety requirements were attempts to make

the work environment safer. The Court finds that there is a fact issue as to whether Nucor exercised some control over Cupp's relevant work, such that summary judgment is not appropriate.

### ii. Knowledge of Risk

Next, turning to whether Nucor either knew or reasonably should have known of the risk or danger that resulted in Cupp's personally injury, the Court finds there is a fact issue that precludes summary judgment. Cupp presented evidence that Nucor knew Cupp would be using an unapproved solvent while performing the work. Specifically, Cupp demonstrated that Nucor's policies required Nucor's review and approval of all chemicals brought on-site. Dkt. 58-1, Alderson Dep. 49:18-7; 65:15-25. Cupp points to deposition testimony showing that Nucor was informed of the manufacturer specifications for the job which Cupp would perform—and it required the use of MEK. Dkt. 58-2, Wilkinson Dep. 24:2-22. Cupp alleges that when Nucor personnel found out that Martin had to use MEK to meet the manufacturer's specifications, they said, "just keep it in the back of your truck, you know, don't have it out where people can see it. Pour it in a different container." *Id.* 24:16-22.

Cupp further alleges that Nucor allowed Cupp into the work area, knowing he would use a grinder on pipe and apply MEK—a highly flammable solvent. Cupp alleges that in every work permit it approved, Nucor failed to identify MEK as a combustible solvent being used—making permits "No" for hazardous material when it knew it should have marked it "Yes." Mr. Alderson testified that the bag house was not a "hot work permit zone" because "there [was] nothing hazardous inside." Dkt. 58-1, Alderson Dep. 10:23-11:6. Consequently, Cupp alleges that on the morning of his incident, he was working under a permit that was not properly marked and did not

include safety precautions for combustible gases or liquid that everyone knew would be present near and on the pipe.

Viewing the facts in the light most favorable to Cupp, there is a genuine issue of material fact as to whether Nucor either knew or should have known that MEK, a chemical which was not approved by Nucor but which Nucor knew to be a highly flammable solvent, was being used for grinding work. Overall, Cupp has presented genuine issues of material fact for Nucor's liability.

### iii. Duty to Warn

Nucor also argues that Cupp's claims are predicated on failure to warn Cupp of the dangers associated with his work. Dkt. 49, Def.'s Mot. for Summ. J. at 19. Nucor argues that there is no liability based on failure to warn because "the danger of operating the grinder beside a flammable liquid was 'open and obvious' and, thus, alleviated any duty to warn." *Id.* A hazard is open and obvious when the "totality of the particular circumstances" objectively demonstrates that a "reasonably prudent person" person in similar circumstances would have "knowledge and full appreciation of the nature and extent of the danger ... as a matter of law." *Dougay v. Dolgencorp of Tex., Inc.*, 2023 WL 2809155, at *2 (5th Cir. April 5, 2023) (per curiam) (citation omitted). Whether a duty exists and whether a danger is "open and obvious" are questions of law. *Painter v. Momentum Energy Corp.*, 271 S.W.3d 388, 411 (Tex. App.—El Paso 2008, pet. denied).

Nucor argues that Plaintiff procured the MEK from "a 5-gallon MEK container that said 'flammable liquid' 'in big font' and surrounded by red labeling." Dkt. 49, Def.'s Mot. for Summ. J. at 20 (citing Dkt. 49-4, Cupp's Dep. 172:22-173:10). Nucor cites to a list of cases where courts finding dangers involving flammable materials open and obvious. Nucor then argues that "the

hazard of causing sparks near a flammable liquid is 'open and obvious as a matter of law,' " so Nucor owed no duty to warn. *Id.*

The Court does not agree that based on the record of this case and facts alleged by Cupp it can find the MEK's danger was open and obvious. As previously discussed, Cupp has presented testimony that the MEK was contained in an unmarked barrel. *See* supra Sections III.B.2.i-ii. While there were procedures in place to approve chemicals being used and special attention given to flammable materials, there is a genuine issue of material fact as to whether the MEK in this case was properly handled or even identified by Nucor for Cupp's use. Therefore, the Court finds there is a fact issue that precludes summary judgment for Cupp's theories of liability arising from failure to warn.

Taking the facts in the light most favorable to Cupp, there is a genuine issue of material fact as to whether Nucor not only failed to adequately warn Cupp about the dangerous condition—but may have even gone so far as to conceal it.

### iv. Vicarious Liability, Ratification, and Gross Negligence.

Finally, Nucor argues that Cupp's respondeat superior, ratification, and gross negligence claims fail because there is no evidence for essential elements of each theory. Dkt. 49, Def.'s Mot. for Summ. J. at 21.

"To establish liability based on respondeat superior, a plaintiff must prove: (1) an agency relationship between the alleged tortfeasor and the employer, e.g., employer-employee relationship; (2) the alleged tortfeasor committed a tort; and (3) the tort was committed in the course and scope of the employee's authority." *Rodriguez v. Panther Expedited Servs., Inc.*, 2018 WL 3622066, at *5 (Tex. App.—San Antonio July 31, 2018, pet. denied) (mem. op.) (quotations omitted). Nucor argues there is no evidence to support the second or third element.

Cupp's respondeat superior claim is based on Nucor's employees and/or agents that acted in the course and scope of their employment and in the furtherance of Nucor's business affairs. Dkt. 41, Pl.'s Sec. Am. Compl. ¶¶ 61-62. As previously discussed, Cupp has presented evidence that a Nucor employee was the source of the instruction to keep the MEK in an unmarked barrel. *See* supra Sections III.B.2.i-ii. Given that evidence of an employee who would have been in the scope of their employment and acting to further Nucor, the Court does not find that summary judgment is appropriate on the respondeat superior claim.

For liability based on ratification, "an employer may be liable for its employee's intentional, malicious, or grossly negligent acts if the employer or a manager for the employer ratifies the acts." *Campbell v. Racetrac Petroleum, Inc.*, 2021 WL 4552253, at *7 (N.D. Tex. Oct. 5, 2021) (citation and internal quotation marks omitted). Nucor argues there is no showing that a Nucor employee engaged in "intentional, malicious, or grossly negligent acts" or that Nucor "confirm[ed], adopt[ed], or fail[ed] to repudiate" such acts. Dkt. 49, Def.'s Mot. for Summ. J. at 21.

Cupp's ratification claim alleges that Nucor knew and approved of workers, contractors, and/or agents performing negligent work at the premises, and either by express word or by course of conduct approved of negligent acts and/or omissions after acquiring knowledge of the negligent conduct. Dkt. 41, Pl.'s Sec. Am. Compl. ¶¶ 63-65. Cupp has put forth evidence showing that Nucor knew the Belzona process would be used for pipe repair at the facility and that would require use of the highly flammable MEK solvent. Dkt. 58-4, Gibson Aff. at 19-21. Cupp demonstrated that Nucor knew the flammable solvent would be used, but that Cupp would be performing the work without a "hot work" permit or the safety precautions that went along with such permit. *See id.* The Court finds there is a fact issue as to whether Nucor had knowledge

of the negligence acts or omissions occurring and approved them by course of conduct, such that summary judgment should not be granted on Plaintiff's ratification claim.

Finally, for gross negligence, a plaintiff must satisfy the ordinary elements of negligence or premises liability claim and demonstrate clear and convincing evidence of "an act or omission involving subjective awareness of an extreme degree of risk, indicating conscious indifference to the rights, safety, or welfare of others." *Austin v. Kroger Tex., L.P.*, 746 F.3d 191, 196 n.2 (5th Cir. 2014). Nucor argues there is not enough evidence to make out a viable claim for ordinary negligence or premises liability. Dkt. 49, Def.'s Mot. for Summ. J. at 21-22. And Nucor argues that there is not enough evidence to justify punitive damages on the gross negligence claim. *Id.* at 22. A corporation may not be held liable for punitive damages for gross negligence unless the corporation itself (1) commits gross negligence, (2) authorized or ratified an agent's gross negligence, (3) was grossly negligent in hiring an unfit agent, or (4) committed gross negligence through the actions or inactions of a vice-principal. *See Phillips v. Super Servs. Holdings, LLC*, 189 F. Supp. 3d 640, 656 (S.D. Tex. 2016).

As a preliminary matter, the Court has already addressed how Cupp's negligence claims withstand summary judgment. *See* supra Sections III.B.2.i-ii. For the higher degree, Cupp argues that Nucor's acts and or omissions, viewed objectively, involved an extreme degree of risk considering the potential harm to Cupp, and that Nucor had actual, subjective awareness of the risk, but proceeded with conscious indifference to Cupp's rights, safety, and welfare with an intentional state of mind. *See* Dkt. 41, Pl.'s Sec. Am. Compl. ¶¶ 66-68. The Court agrees that there is a fact issue which precludes summary judgment on Cupp's gross negligence claim against Nucor. The testimony about the direction to conceal the flammable MEK substance, which would in turn be defying Nucor's own safety policies, provides a fact issue of whether

there was subjective awareness by Nucor indicating conscious indifference to the safety of those working in its facility. *See* supra Sections III.B.2.i-ii. Cupp has demonstrated that Nucor had subjective awareness that a highly flammable solvent would be used in an area that lacked the proper safety procedures, and there is a fact issue as to whether Nucor is responsible for concealing the very danger which caused Cupp's injuries.

## IV.   CONCLUSION

Therefore, for the reasons stated above, Defendant's Motion for Summary Judgment (Dkt. 49) is **DENIED**. Plaintiff's Motion to Replace Exhibit (Dkt. 62) is **GRANTED**.

**IT IS THEREFORE ORDERED** that the Clerk of the Court is directed to replace the previously filed copy of Exhibit D (ECF No. 58-4) with the copy of Exhibit D attached to Plaintiff's Motion for Leave filed on November 4, 2025.

**SIGNED** on January 12, 2026.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE